IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00030-WYD-MEH

JOHN B. VIROSTEK, and
ROBIN WOOD-VIROSTEK,

      Plaintiffs,

v.

INDYMAC MORTGAGE SERVICES,
ONE WEST BANK,
DEUTSCHE BANK NATIONAL TRUST, and
MORTGAGE ELECTRONIC REGISTRATION SYSTEM (MERS),

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is the Defendants IndyMac Mortgage Services, OneWest Bank, FSB,

Deutsche Bank National Trust and Mortgage Electronic Registration Systems' Motion to Dismiss

Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [filed March 21, 2011;

docket #11]. The motion is referred to this Court for recommendation. (Docket #15.) The matter

is fully briefed, and oral argument would not assist the Court in its adjudication. For the reasons that

follow and considering the entire record herein, the Court **RECOMMENDS** the Defendants'

Motion to Dismiss be **GRANTED** in part and **DENIED** in part.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file
any written objections in order to obtain reconsideration by the District Judge to whom this case is
assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings
or recommendations to which the objections are being made. The District Court need not consider
frivolous, conclusive or general objections. A party's failure to file such written objections to
proposed findings and recommendations contained in this report may bar the party from a de novo

## BACKGROUND

**I.    Procedural History**

On January 5, 2011, Plaintiffs, proceeding *pro se*, initiated this action by filing "Plaintiff's Verified Complaint for Violation of RESPA, TILA, Fraud and Breach of Contract." (Docket # 1.) Plaintiff later, as a matter of right, filed "Plaintiff's Verified First Amended Complaint for Violation of RESPA, TILA, Fraud and Breach of Contract." (Docket #7.) Plaintiffs seek contract rescission, injunction of foreclosure and eviction proceedings, and damages for violations of various statutes and common laws pertaining to the foreclosure of their property in Frisco, Colorado. Plaintiffs bring claims of fraud, violation of the Colorado Consumer Protection Act (CCPA), breach of contract, breach of duty of good faith and fair dealing, breach of implied contract, breach of fiduciary duty, and violations of the Truth in Lending Act (TILA).

On March 21, 2011, Defendants filed the present Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (Docket # 11.) Defendants assert that (1) Plaintiffs have failed to state a claim for violation of the CCPA, breach of contract, breach of duty of good faith and fair dealing, breach of implied contract, and breach of fiduciary duty; (2) Plaintiffs have insufficiently pled claims for fraud and violation of TILA; (3) Plaintiffs' claim for rescission under TILA is barred by the applicable statute of repose; and (4) Plaintiffs' claim for damages under TILA is barred by the applicable statute of limitations.

---

determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

2

On April 14, 2011, Plaintiffs filed a response to Defendants' Motion to Dismiss, citing various cases clarifying the legal standard for a motion pursuant to Rule 12(b)(6) but failing to make an argument as to how Plaintiffs' Amended Complaint meets this standard. (Docket #19.) Plaintiffs also cite Rule 7(c) in their conclusion saying that "Demurer or Motion to Dismiss has been abolished." (*Id.*) However, this argument is irrelevant because Rule 7(c) was struck from the Federal Rules of Civil Procedure with the 1983 amendments.

Defendants then filed a reply in support of the Motion to Dismiss on April 28, 2011, asserting that they do not dispute the standard by which a motion to dismiss is to be evaluated and repeating their original arguments. (Docket #20.)

On July 15, 2011, this Court issued an order for the Plaintiffs to show cause, in writing on or before August 8, 2011, why some or all of their claims should not be dismissed for the court's lack of subject matter jurisdiction. (Docket #29.) Plaintiffs did not respond to the order and have filed nothing in this matter since June 30, 2011.

## II.     Statement of Facts

These allegations are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

Plaintiffs purchased real property located at 972 Lakepoint Drive, Frisco, Colorado on September 9, 2005. (Docket #7 at 4.) To purchase the property, Plaintiffs entered into an agreement with IndyMac Bank, FSB ("IndyMac") to borrow funds. (*Id.*) This agreement consisted of a Promissory Note and a Deed of Trust, which were recorded with the Summit County Clerk and Recorder's Office on September 22, 2005. (*Id.*) The Deed of Trust identified IndyMac as the lender and Mortgage Electronic Registration System, Inc. ("MERS") as the nominee of IndyMac and the

beneficiary.  (Docket # 11-2 at 2-3.)[2]  IndyMac subsequently transferred the Promissory Note to

OneWest Bank ("OneWest").  (Docket #7 at 5.)  OneWest then transferred the Promissory Note to

another party who in turn transferred it to another party and so on for an unknown number of

transactions.  (*Id.*)  The last party to receive the Promissory Note was Deutsche Bank National Trust

("Deutsche").  (*Id.*)  Since that time, eviction and foreclosure proceedings apparently have been

initiated against the Plaintiffs.  (*Id.* at 1.)

## LEGAL STANDARDS

### I.  Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter

jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Subject matter jurisdiction is a threshold matter that may

be addressed by the Court *sua sponte*.  *See* Fed. R. Civ. P. 12(h)(3) ("[i]f the court determines at any

time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Tuck v.*

*United Servs. Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988) (court has a duty to determine subject

matter jurisdiction *sua sponte*).

Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only

a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23

F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and

may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction

"must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction

is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in

---

[2]The Deed of Trust is incorporated by reference to it in the Complaint and is central to
Plaintiffs' claims; thus, the deed may be considered in analyzing the motion to dismiss.  *See GFF*
*Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

original).   A Rule 12(b)(1) dismissal "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).   The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.   *See Basso*, 495 F.2d at 909.   Accordingly, Plaintiffs in this case bear the burden of establishing that this Court has jurisdiction to hear their claims.   Further, under Rule 12(b)(1), "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'"   *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion."   *Id.*

## II.   Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 1949-51.   Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."   *Id.* at 1951.   If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.   *Id.* at 1950.

**III.     Dismissal pursuant to Fed. R. Civ. P. 8 and 9(b)**

The adequacy of pleadings is governed by Federal Civil Procedure Rule 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).  Determining whether the allegations in a complaint are "plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.  If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Iqbal*, 129 S.Ct. at 1950.

For certain claims, such as fraud or misrepresentation, a more stringent standard is mandated. Federal Civil Procedure Rule 9(b) requires that "[f]or any claim alleging fraud, the circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Technology Corp. Securities Litigation,* 147 F. Supp. 2d 1049, 1054 (D. Colo. 2001) (citing Fed. R. Civ. P. 9(b)). Thus a plaintiff in such a case must plead "the who, what, when, where, and how of the alleged fraud" or in other words, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006).  In the District of Colorado, this is required regardless of whether the alleged fraud is an active representation or a passive omission. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010).  The purposes of Rules 8 and 9(b) are "to afford defendant fair notice of plaintiff's claims and

6

the factual ground upon which they are based." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010).

## IV.    Pro Se Plaintiff's Complaint

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

Plaintiffs bring seven claims in their Amended Complaint: (1) fraud, (2) violation of the CCPA, (3) breach of contract, (4) breach of duty of good faith and fair dealing, (5) breach of implied contract, (6) breach of fiduciary duty, and (7) violation of the TILA.  Upon initial review of the pleading, the Court *sua sponte* raised the issue whether this Court has subject matter jurisdiction over some or all of Plaintiffs' claims by issuing an order to show cause why Plaintiffs' claims should not be dismissed.  Plaintiffs did not respond.  Thus, the Court will proceed first with an analysis

concerning the Court's jurisdiction to hear the Plaintiffs' claims.  Next, to the extent that the Court

has jurisdiction, it will proceed to analyze Defendants' motion seeking to dismiss Plaintiffs' claims

pursuant to Fed. R. Civ. P. 12(b)(6).

## I.      Subject-Matter Jurisdiction

Upon closer inspection of the Amended Complaint and reading the pleading liberally as I

must, the Court finds that Plaintiffs seek rescission of the promissory note underlying the mortgage

loan on their property partly due to questions concerning the identity of the noteholder.  (*See*

Amended Complaint, ¶¶ 36-41.)  Moreover, Plaintiffs assert that "[i]n this instant case, Plaintiffs

seek the injunction of various foreclosure and eviction proceedings based on Defendants [sic]

routine failure to comply with the statutory prerequisites to foreclosure." (*Id.*, ¶ 3.)  Plaintiffs allege

that "Defendants have consistently, through their actions and/or inactions, acted fraudulently in

initiating and pursuing foreclosure and eviction claims." (*Id.*, ¶ 22.)  Plaintiffs contend that they,

therefore, "are entitled to the protections and requirements set forth in the Colorado Foreclosure

Laws." (*Id.*, ¶ 77.)[3]

Thus, at least in part, the Plaintiffs seek to overturn the court's decisions in the underlying

state foreclosure and/or eviction proceedings.  It appears from the Amended Complaint that

Plaintiffs seek to do so by alleging violations of the Colorado Consumer Protection Act ("CCPA").[4]

---

[3]Plaintiffs' assertions seeking relief for the foreclosure and eviction proceedings raise some confusion, since the Plaintiffs do not include such request(s) for relief at the conclusion of the Amended Complaint.  However, reading the Plaintiffs' allegations liberally, I must conclude that Plaintiffs seek to prevent or overturn foreclosure and/or eviction proceedings through this action.

[4]Here, Plaintiffs cite Arizona Revised Statute ("ARS") § 33 in identifying the "Second Count," then proceed to claim that "[t]he conduct of Defendants, as set forth above, constitutes unfair, fraudulent and deceptive trade practices prohibited under Colorado law and the consumer fraud act." (Amended Complaint, ¶ 75, docket #7.)  As such, the Court will proceed with the

Plaintiffs allege that Defendants have failed to "properly execute foreclosure documents required to foreclose," and "properly execute proper procedures required to hold a Trustee Sale." (Amended Complaint, ¶¶ 78-79.)  In addition, Plaintiffs' contract claims set forth in the Third and Fifth Counts, although sparsely alleged, might possibly be based upon the factual allegations set forth in paragraphs 36-41 of the Amended Complaint concerning the identity of the actual noteholder.  Such allegations reflect issues that are, were or should have been resolved by the state court in the foreclosure and eviction proceedings.  However, it is unclear from Plaintiffs' allegations whether the foreclosure and/or eviction proceedings they seek to enjoin are ongoing or have concluded.

If Plaintiffs seek injunctive relief concerning the foreclosure and/or eviction, and the state court proceedings on the Plaintiffs' property have concluded, this Court may be barred from reviewing any judgments of the state court by the *Rooker-Feldman* doctrine.  If state court proceedings are ongoing, this Court may be barred from reviewing a claim pursuant to the *Younger* abstention doctrine.

      A.     <u>Rooker-Feldman Doctrine</u>

The *Rooker-Feldman* doctrine is a jurisdictional prohibition that is based upon 28 U.S.C. § 1257, which holds that federal review of state court judgments may be obtained only in the United States Supreme Court.  *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994) (holding that the *Rooker-Feldman* doctrine bars "a party losing in state court. . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights").

---

understanding that Plaintiffs intend to argue Defendants violated the concomitant Colorado law, which would be the CCPA.

Assuming the foreclosure and eviction proceedings have concluded, the allegations presented in the Second (CCPA), Third and Fifth (contract) Counts of the Amended Complaint and the Plaintiffs' request for injunctive relief describe the very types of circumstances that may be covered by the *Rooker-Feldman* doctrine.  As explained above, federal courts are prohibited by that doctrine from reviewing the actions or judgments of state courts.  However, the *Rooker-Feldman* doctrine is broader than that statement would imply.  It applies both to claims that have been "actually decided by a state court" and those that are "'inextricably intertwined' with a state court judgment." *Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 707 (10th Cir. 2004). "To determine whether a federal plaintiff's claim is inextricably intertwined with a state court judgment, [the Court] must pay close attention to the relief the plaintiff seeks." *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147-48 (10th Cir. 2004), *overruled in part on other grounds by Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293-94 (2005). "Where a plaintiff seeks a remedy that would disrupt or undo a state court judgment, the federal claim is inextricably intertwined with the state court judgment." *Id.* at 1148.  In short, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse some action or decision by a state court, or would effectively void its ruling.  *Harpin v. Oakley Custom Homes, Inc.*, Nos. 99-1553, 99-1596, 2000 WL 1531819, at *2 (10th Cir. 2000) (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)).

The allegations presented by Plaintiffs in their Second, Third and Fifth Counts reflect that their request for injunctive relief might improperly affect a ruling or rulings entered in state court. A decision in this case regarding the propriety of Defendants' conduct in the foreclosure and eviction proceedings and the identity of the noteholder could interfere with decision(s) already made by the state court during foreclosure proceedings.  Additionally, any request by the Plaintiffs for this

Court to prevent or overturn a foreclosure or eviction may disrupt or undo proceedings in state court. These are precisely the types of concerns that are addressed by the *Rooker-Feldman* doctrine. *See, e.g., Gordon v. Wells Fargo Bank, N.A.*, No. 11-cv-00123-LTB-BNB, 2011 WL 1557866, at *2 (D. Colo. Apr. 25, 2011) (finding plaintiff's request to overturn state court order authorizing sale in foreclosure barred by *Rooker-Feldman*); *Brode v. Chase Home Finance, LLC,* No. 10-cv-00692-WYD-MJW, 2010 WL 2691693, at *6 (D. Colo. July 6, 2010) (claim challenging ruling in state foreclosure proceeding that bank lacked a valid security interest was barred by *Rooker-Feldman* doctrine); *Mayhew v. Cherry Creek Mortg. Co., Inc.,* No. 09-cv-00219-PAB-CBS, 2010 WL 935674, at *16-17 (D. Colo. March 10, 2010) (claim seeking to challenge or reverse completed state foreclosure proceeding was barred by *Rooker-Feldman* doctrine); *Burlinson v. Wells Fargo Bank, N.A.,* No. 08-cv-01274-REB-MEH, 2009 WL 646330, at *5-6 (D. Colo. March 9, 2009) (same).

B.     *Younger* Abstention Doctrine

The *Younger* abstention doctrine dictates that federal courts not interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings – when such relief could adequately be sought before the state court." *Amanatullah v. Colorado Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999)). *Younger* abstention requires that federal courts abstain from exercising jurisdiction when:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'

*Id.* (quoting *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)).

When determining whether abstention is proper under the *Younger* framework, a court must "be sensitive to the competing tension between protecting federal jurisdiction and honoring

11

principles of Our Federalism and comity." *Taylor*, 126 F.3d at 1296.  However, "*Younger* abstention is 'non-discretionary ... absent extraordinary circumstances,' if the three conditions are indeed satisfied." *Id.* (quoting *Amanatullah*, 187 F.3d at 1163).  "Extraordinary circumstances" includes situations "where the plaintiff makes a showing of bad faith or harassment by state officials responsible for the prosecution or enforcement action," or "where the state law or regulation to be applied 'is flagrantly and patently violative of express constitutional prohibitions.'"  *Brown ex rel. Brown v. Day*, 555 F.3d 882, 888 n. 4 (10th Cir. 2009) (quoting *Trainor v. Hernandez*, 431 U.S. 434, 442 n.7 (1977)) (citations and quotations omitted).

The allegations presented by Plaintiffs in their lawsuit reflect that their claims and requests for relief may be related to ongoing proceedings in state court on matters of state concern, if the Plaintiffs seek injunctive relief concerning the foreclosure and/or eviction.  As addressed above, foreclosure proceedings may require a similar analysis of the facts as to Plaintiffs' contract and CCPA claims.  Furthermore, all of these claims are pendant claims to the TILA claim and involve questions of state law.  These are precisely the types of concerns that are addressed by the *Younger* abstention doctrine.  *See, e.g., Gordon*, No. 11-cv-00123-LTB-BNB, 2011 WL 1557866, at *2; *see also Burlinson,* No. 08-cv-01274-REB-MEH, 2009 WL 646330, at *5-6.

Construing Plaintiffs' allegations liberally as I must, the Court finds that it is barred by the *Rooker-Feldman* or *Younger* abstention doctrines from hearing Plaintiffs' second claim for relief concerning Defendants' conduct in the foreclosure and/or eviction proceedings, as well as the third and fifth claims for relief to the extent that they are based upon Plaintiffs' allegations concerning the identity of the noteholder in this matter.  As such, the Court respectfully recommends that the District Court dismiss such claims for lack of subject matter jurisdiction.

## II.    Motion to Dismiss

The remaining "counts" and portions of claims alleged in the Amended Complaint appear to be based upon Plaintiffs' allegations concerning initiation of the mortgage loan.  Thus, the Court will proceed with an analysis of the Defendants' motion to dismiss Plaintiffs' remaining claims, and will address each claim in turn.

The Court notes first that Plaintiffs brought this action as an "original" proceeding pursuant to 28 U.S.C. § 1331 based upon alleged violations of the Truth in Lending Act (TILA) and Real Estate Settlement and Procedures Act (RESPA).[5]   (Amended Complaint, ¶¶ 13, 14 & 17.)   In addition, Plaintiffs seek to invoke the Court's pendent jurisdiction to hear their state law claims in this matter.  (*Id.*, ¶ 15.)  Because the court's subject-matter jurisdiction is based upon the Plaintiffs' TILA claim, this Court will analyze first whether Plaintiffs sufficiently allege that claim.  The Court will then determine whether to proceed with an analysis of the state law claims.

A.      Truth in Lending Act

In their "Seventh Count," Plaintiffs allege that Defendants violated the TILA, specifically 15 U.S.C. § 1635(a), and the applicable regulation, 12 C.F.R. §226.23, by failing to notify Plaintiffs of their right to cancel.  (Amended Complaint, ¶ 110.)  Thus, Plaintiffs claim both that the contract may be rescinded and that they are entitled to damages arising from Defendants' failure.

1.      Rescission

A borrower may rescind a TILA-covered transaction within three days of that transaction closing.  *See* 15 U.S.C. § 1635(a).  However, if the lender fails to properly deliver information and forms relating to this right at the time of closing, the three-day period begins to run on the date that the information and forms are delivered.  *Id.*  If the required information and forms are never provided by the lender, TILA sets an absolute three-year limitation on the borrower's right of

---

[5]Although Plaintiffs mention the RESPA in the "Introduction" and "Jurisdiction" portions of the Amended Complaint, Plaintiffs assert no claim under that statute.

rescission, measured from the closing of the transaction.  15 U.S.C. § 1635(f).

In *Beach v. Ocwen Federal Bank*, the Supreme Court concluded that the three-year time period of § 1635(f) was not a statute of limitations – "bar[ring] the remedy for its enforcement" – but rather a statute of repose, "operat[ing], with the lapse of time, to extinguish the right which is the foundation of the claim."  523 U.S. 410, 416 (1998).  The language of § 1635(f), the Court explained, "talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous."  *Id.* at 417.

Here, the relevant date is the date on which Plaintiffs entered into a loan agreement with Defendant IndyMac, September 9, 2005.  (Docket #7 at 4.)  At that time, the Promissory Note was signed and, according to the Plaintiffs, at least some of the relevant disclosures were given.  The three-year statue of repose for that transaction was, thus, reached on September 9, 2008.  This action was not filed until January 5, 2011.  Consequently, Plaintiffs' claim for rescission of the contract is extinguished.  Plaintiffs no longer have any claim for rescission under TILA.

2.    Damages

A suit for damages arising under a TILA claim must be filed within one year of the relevant violation.  15 U.S.C. § 1640(e).  Typically, the date used to determine the running of this statute of limitations is the date of the closing of the loan or the signing of the promissory note.  *See Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1258 (D. Colo. 2004).

However, a claim for damages under TILA is subject to equitable tolling.  *Heil v. Wells Fargo Bank, N.A.*, 298 F. App'x 703, 706 (10th Cir. 2008).  "'Equitable tolling' is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances."  *Id.*  (citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986)).

14

However, to do so the plaintiff must show that despite the exercise of due diligence he was or would have been unable to discover the conduct that gives rise to the claim. *Id.*; *see also Croxford v. Sutherland Title*, No. 2:10–CV–0573, 2011 WL 64306, at*1 (D. Utah Jan. 07, 2011) (unpublished) (citing *Moor*, 784 F.2d at 633-34).

Plaintiffs allege that "multiple good faith estimates ('GFE') were used to mislead and confuse Plaintiffs about the actual terms of the Promissory Note[ ]." (Amended Complaint, ¶ 111.)[6] However, Plaintiffs do not allege that any of these GFEs were false or that information on the right of rescission was not available from other sources. Thus, Plaintiffs fail to sufficiently allege how they exercised due diligence or how, despite such efforts, they would have been unable to discover that Defendants had not disclosed the right of rescission or other such terms. *See Croxford*, 2011 WL 64306, at *1 ("It is not sufficient, however, to claim equitable tolling when a defendant simply fails to make a required disclosure, as opposed to providing false information, because such a plaintiff would '[know] or should have known of this failure as of that date'"). Moreover, Plaintiffs' allegation that they only became aware of the alleged violations following "news reports within the past year" (Amended Complaint, ¶ 120) is insufficient to satisfy the requirements for equitable tolling. Therefore, this Court recommends that the District Court find Plaintiffs have failed to assert sufficient allegations necessary for equitable tolling and, as such, have failed to state a claim for damages under TILA against Defendants.

In light of the Court's recommendation thus far, it would be proper to further recommend that the District Court decline to exercise supplemental jurisdiction over the Plaintiffs' state law claims. A district court may decline to exercise supplemental jurisdiction over state law claims

---

[6]It appears that Plaintiffs attempt to allege a second violation of the TILA in paragraph 112; however, the sentence is incomplete and the Court cannot discern the content of the allegation nor the intent of the Plaintiffs.

when it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); *Exum v. U.S. Olympic Committee,* 389 F.3d 1130, 1138-39 (10th Cir. 2004); *Doe v. Bagan,* 41 F.3d 571, 577 (10th Cir. 1994) (approving dismissal of state law claims for lack of subject matter jurisdiction after summary judgment was granted as to all federal claims); *cf. United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). "Pendent jurisdiction is a doctrine of discretion, not of Plaintiff's right." *Baker v. Bd. of Regents of Kan.,* 991 F.2d 628, 634 (10th Cir. 1993).

However, there is a possibility the District Court may find it proper to grant Plaintiffs leave to amend the Amended Complaint to cure the deficiencies identified in their claim for damages under TILA. *See* Section III, *infra.* Therefore, in an effort to provide a thorough and complete report and recommendation, the Court will proceed to analyze Defendants' motion to dismiss Plaintiffs' state law claims, should the District Court determine it is proper to invoke pendent jurisdiction.

B.     Fraud

In the "First Count" of their Amended Complaint, Plaintiffs allege that Defendants committed fraud by failing to disclose certain information to Plaintiffs. Defendants argue that Plaintiffs' fraud claim fails to meet the standards of Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud or mistake. (Motion at 5-6.) Defendants contend that Plaintiffs' allegations "contain[ ] only vague assertions of 'misrepresentations' and 'concealment.'" (*Id.* at 6.)

The five elements that must be established for a claim of fraud in Colorado are:

(1) concealment of a material existing fact, that in equity and good conscience should be disclosed; (2) knowledge on the part of the one making the representation that it is false; or utter indifference to its truth or falsity; or knowledge that he is concealing

16

a material fact that in equity and good conscience he should disclose; (3) ignorance on the part of the one to whom representations are made or from whom such fact is concealed, of the falsity of the representation or of the existence of the fact concealed; (4) the representation or concealment made or practiced with the intention that it shall be acted upon; and (5) action on the representation or concealment resulting in damage.

*Universal Drilling Co. v. Camay Drilling Co.*, 737 F.2d 869, 872 (10th Cir. 1984) (citing *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458, 462 (1937)); *see also Ackmann v. Merch. Mortg. & Trust Corp.*, 645 P.2d 7, 13 (Colo. 1982).

First, the Court notes that Plaintiffs' fraud claim does not identify the specific Defendant(s) to which it is addressed; however, because the claim concerns alleged violations occurring at the inception of the loan and the Plaintiffs identify Defendant Indymac in the applicable portion of the Statement of Facts, the Court construes the claim as brought against Defendant IndyMac. Plaintiffs allege that Defendant IndyMac failed to properly advise them of the availability of a less expensive loan at the time they entered into the loan agreement at issue. (Amended Complaint, ¶ 30.) Additionally, Plaintiffs allege that Defendant IndyMac failed to provide appropriate documentation showing that the fees listed on the HUD1 settlement statement were authorized by law, that the services underlying the fees were necessary and that the fee amounts charged were reasonable. (*Id.*, ¶¶ 33-34.) Plaintiffs allege that Defendants made these omissions with knowledge of their falsity and the intent that Plaintiffs rely upon them. (*Id.*, ¶¶ 50-51.) Furthermore, Plaintiffs allege that they "did not have equal access to, or equal opportunity to discover information upon which Defendants gave." (*Id.*, ¶53.) Finally, Plaintiffs allege that they relied on these non-disclosures (*id.*, ¶ 54), which resulted in severe and irreparable damage to Plaintiffs' credit scores. (*Id.*, ¶ 44.)[7]

---

[7]Plaintiffs also assert that Defendants attempted to "fraudulently circumvent the proper assignments and avoid paying of the county filing fees [to] unjustly enrich themselves." (Amended Complaint, ¶ 38.) However, Plaintiffs fail to establish how this was fraudulent and how Plaintiffs have standing to sue for such claims. Furthermore, these allegations are not addressed in Plaintiffs' separate claims for relief. Thus, the Court finds such allegations to be bare and conclusory, and

Taking these factual allegations as true, Plaintiffs have alleged that (1) Defendant IndyMac concealed the material fact that Plaintiffs qualified for a less expensive loan and it failed to disclose certain information regarding the fees charged in the Plaintiffs' mortgage loan; (2) Defendant IndyMac knew that it was concealing material facts that in equity and good conscience should have been disclosed; (3) Plaintiffs were ignorant that they qualified for a less expensive loan and that the above disclosures were required; (4) these facts were concealed with the intention that Plaintiffs act upon them; and (5) action on these facts has resulted in damage to Plaintiffs. Plaintiffs' allegations meet the elements stated for a fraud claim in Colorado. Thus, the Court recommends that the District Court find Plaintiffs have sufficiently alleged a claim for fraud against Defendant IndyMac, and deny Defendants' motion in this regard.

C.      Breach of Contract and Breach of Implied Contract Claims

The following analysis assumes that Plaintiffs' contract claims may be based on allegations other than those concerning the identity of the noteholder in this case. *See supra*, § 1.

For their breach of contract claim ("Third Count"), Plaintiffs allege that Defendants violated the contract they had with Plaintiffs. To establish a claim for breach of contract in Colorado a plaintiff must allege: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted). For their breach of implied contract claim ("Fifth Count"), Plaintiffs allege that they have suffered damages from a breach by Defendants of an "implied contract." An implied contract is formed in much the same way as an express contract, with an offer and acceptance. *See, e.g., Watson v. Pub. Serv. Co. of Colo.*, 207 P.3d 860, 868 (Colo. App. 2008).

---

declines to consider them. *See Iqbal*, 129 S. Ct. at 1949.

However, for a contract to be implied, the offer creating it must be "sufficiently definite that the promises and performances of each party are reasonably certain." *Id.* (citing *Stice v. Peterson*, 144 Colo. 219, 224 (1960)).

Here, the Court finds the Plaintiffs have failed to provide any factual allegations to support any one of the four elements necessary to state a breach of contract claim. The only allegations stated are conclusory in nature and merely provide restatements of the law. (*See* Amended Complaint, ¶¶ 82-86.) Moreover, for their breach of implied contract claim, Plaintiffs merely allege that "Defendants made various oral agreements and representations to Plaintiffs" and that Defendants violated these. (*Id.*, ¶¶ 98-102.) Such allegations qualify only as bare assertions and are not sufficient to state a claim. *See Iqbal*, 129 S. Ct. at 1949. The Court cannot discern from the Statement of Facts which facts are relied upon by Plaintiffs for their breach of contract and breach of implied contract claims. Thus, this Court recommends that the District Court find Plaintiffs have failed to sufficiently allege claims against Defendants for breach of contract and breach of implied contract.

      D.    <u>Breach of Good Faith and Fair Dealing Claim</u>

In their "Fourth Count," Plaintiffs allege that Defendants breached the covenant of good faith and fair dealing by acting with bad motive and contrary to Plaintiffs' reasonable expectations. The duty of good faith and fair dealing is part of every contract and requires the parties to perform their obligations in a reasonable manner. *O'Reilly v. Physicians Mut. Ins. Co.*, 992 P.2d 644, 646 (Colo. App. 1999) (citing *Crown Life Ins. Co. v. Haag Ltd. P'ship*, 929 P.2d 42 (Colo. App. 1996)). "The purpose of the duty is to effectuate the intentions of the parties or to honor their reasonable expectations as expressed in their agreement." *Id.* (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493 (Colo. 1995)). "[A] breach of the duty occurs when one party uses discretion conferred by the

contract to act dishonestly or to act outside the scope of accepted commercial practices to deprive the other party of the benefit of the contract." *Id.* (citing *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359 (Colo. App. 1994)).

The Court notes first that Plaintiffs' allegations underlying this claim against Defendants other than IndyMac are conclusory and supported by no facts. Plaintiffs allege that Defendant IndyMac's duty of good faith and fair dealing arose at closing when IndyMac was compensated and the loan documents were signed. (Amended Complaint, ¶ 28.) Plaintiffs further allege that by failing to "dutifully perform the terms of the agreements detailed above, Defendants have violated the duty of good faith and fair dealing that arises in all contracts as more fully set forth in the factual allegations above." (*Id.*, ¶ 95.) However, neither in the portion of the Amended Complaint addressing the breach of good faith and fair dealing claim nor in the Statement of Facts have Plaintiffs provided any detail or explanation as to how IndyMac or the other Defendants used discretion under a contract to act dishonestly or outside the scope of accepted commercial practices. Thus, this Court recommends that the District Court find Plaintiffs have failed to sufficiently allege claims against the Defendants for breach of good faith and fair dealing.

E.    Breach of Fiduciary Duty

For their "Sixth Count," Plaintiffs allege that Defendants owed them a fiduciary duty and that Defendants breached this duty. In Colorado, to establish a claim for a breach of fiduciary duty arising from a confidential relationship, a plaintiff must prove at least four elements:

> (1) either the reposing of trust and confidence in the other party was justified, or the party in whom such confidence was reposed either invited, ostensibly accepted, or acquiesced in such trust; (2) the alleged trustee assumed a primary duty to represent the other party's interest in the subject of the transaction; (3) the nature and scope of the duty that arose by reason of the confidential relationship extended to the subject matter of the suit; and (4) that duty was violated, resulting in damage to the party reposing such confidence.

*Equitex, Inc. v. Ungar*, 60 P.3d 746, 752 (Colo. App. 2002) (quoting *Jarnagin v. Busby, Inc.*, 867

P.2d 63, 67 (Colo. App. 1993)).   Generally, absent special circumstances, the adversarial relationship between a lending institution and its customer does not justify a reposing of trust and confidence by the customer with the lending institution.  *Wells Fargo Realty*, 872 P.2d at 1365 (citing *First Nat'l Bank v. Theos*, 794 P.2d 1055 (Colo. App. 1990)).

Here, Plaintiffs allege that "Defendants owed a fiduciary duty to the Plaintiffs to act primarily for their benefit," and that this duty of care exists "under TILA, HOEPA, RESPA and Regulations X and Z promulgated there under."  (Amended Complaint, ¶ 105.)   According to Plaintiffs, Defendant IndyMac violated its fiduciary duty by giving only partial disclosure to Plaintiffs and that "Plaintiffs relied, to their detriment, on misleading assertions and conduct of the Defendants."  (*Id.*, ¶ 29, ¶ 92.)

The Court notes first that Plaintiffs' allegations underlying this claim against Defendants other than IndyMac are conclusory and supported by no facts.  Plaintiffs' assertion that Defendant IndyMac owed them a duty of care under TILA, HOEPA, and RESPA generally has not been found to create a fiduciary duty.   *See, e.g., Avila v. Countrywide Home Loans, Inc.*,   No. 10–CV–05485–LHK, 2011 WL 1192999, at *5 (N.D. Cal. Mar. 29, 2011) (unpublished) (analyzing nearly identical language, the court found that "lenders do not owe any fiduciary duty to borrowers" and concluded that the claim was insufficiently pled).  Outside of such statutes, Plaintiffs fail to provide details of any special circumstances that may have created an exception to the general rule that a lender owes no fiduciary duty to a borrower.  Thus, this Court recommends that the District Court find Plaintiffs have failed to sufficiently allege claims against Defendants for breach of fiduciary duty.

## III.   Leave to Amend

In the present motion, Defendants seek dismissal of Plaintiffs' Amended Complaint in its entirety.  Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is a harsh remedy to be used cautiously

so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989). As such, in this jurisdiction, the Court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10. The Court may dismiss "sua sponte when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him to amend his complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991)).

The Plaintiffs in this case are proceeding *pro se* and have not been previously granted leave to amend. This Court has concluded that it has no subject matter jurisdiction to hear Plaintiffs' CCPA claim, and Plaintiffs no longer have a claim for rescission under TILA; therefore, any amendments to such claims would be futile. However, Plaintiffs' claims for fraud (except as to Defendant IndyMac), for damages for violation of the TILA, for breach of contract, breach of implied contract, breach of good faith and fair dealing, breach of fiduciary duty against each and every Defendant simply fail to allege sufficient factual information to support such claims. Therefore, because it is possible Plaintiffs may cure the pleading deficiencies of these claims against the Defendants, the Court recommends that Plaintiffs be allowed to file a Second Amended Complaint, consistent with Fed. R. Civ. P. 8 and 9(b) and other federal and local rules, within thirty (30) days of the District Court's Order. That is, the Plaintiffs must identify the rights they believe were violated, the name of the person or entity which violated that right, exactly what that individual did or failed to do, how the action or inaction of that person or entity is connected to the violation of the Plaintiffs' rights, and what specific injury Plaintiffs suffered because of the other person's or entity's conduct. *See Ferrell v. Stumpf*, No. 10-1231-PHX-MHM, 2010 WL 3925133, at *2 (D. Ariz. Oct. 4, 2010) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)). Any Second Amended

Complaint should focus on facts from which the Court can determine the harm each and every Defendant allegedly caused to Plaintiffs and why Plaintiffs are entitled to seek relief for the alleged harms in this Court.  *Id.*

## CONCLUSION

In the current Amended Complaint, Plaintiffs have sufficiently alleged a claim of fraud against Defendant IndyMac.  However, Plaintiffs' CCPA claim and any contract claims based upon the identity of the noteholder are barred for lack of subject-matter jurisdiction, and Plaintiffs' claim for rescission of a contract under TILA is barred by passage of the statute of repose.  Additionally, Plaintiffs have failed to provide sufficient factual allegations to state claims for fraud (except as to IndyMac), for damages under TILA, breach of contract, breach of good faith and fair dealing, breach of implied contract, and breach of fiduciary duty against all of the Defendants.  The Court believes that, in accordance with Tenth Circuit precedent, amendment may be proper with respect to this last set of claims.

Accordingly, the Court RECOMMENDS that the District Court **GRANT IN PART AND DENY IN PART** Defendants IndyMac Mortgage Services, OneWest Bank, FSB, Deutsche Bank National Trust and Mortgage Electronic Registration Systems' Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [filed March 21, 2011; docket #11] as follows:

(1)     Deny the motion with respect to the claim for fraud against Defendant IndyMac;

(2)     Grant the motion with respect to the CCPA claim, any contract claims based upon the identity of the noteholder, and the claim for rescission under TILA, and dismiss such claims with prejudice;

(3)     Grant the motion with respect to the claims for fraud (except as to IndyMac), for damages under TILA, for breach of contract, breach of good faith and fair dealing,

breach of implied contract, and breach of fiduciary duty, and dismiss such claims without prejudice; and

(4) Grant the Plaintiffs leave to file, within thirty (30) days of the Court's order, a Second Amended Complaint asserting the claims set forth in paragraph (3), if they so choose, in accordance with this Recommendation and all applicable local and federal court rules.

Respectfully submitted at Denver, Colorado, this 6th day of September, 2011.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge